The next case for argument is 16-2015 Tomita Technologies v. Nintendo. May it please the Court, Ian DiBernardo on behalf of the clients Tomita. The District Court violated Supreme Court and this Court's precedent by creating its own standard for equivalence and that conflated function way results with insubstantial differences, and by considering enhanced features of the accused 3DS that had nothing to do with the patent and nothing to do with the presided function at issue. These legal errors, although not the only ones, require reversal, so I'll start there. If I can start here, on page 32 of the opening brief, you contend the District Court found that, quote, software implementation essentially could never be equivalent to hardware implementation and that that finding conflicts with overhead door. And the affiliates observed that the passage, you quote, from overhead door, involves witness testimony is not a holding of our court. You don't respond to that in your reply, so I'd like to give you a chance to. I believe we do actually respond to that, Your Honor. The Court actually does acknowledge that. No, you cite other aspects of overhead door in your reply. Page 7. I think in both overhead door and interactive pictures, it's clear that this Court has acknowledged that hardware and software can be interchangeable, and what the District Court did was apply the way problem from function way result to trump evidence of known interchangeability. The Court here made findings that the disclosed structure in the patent and the accused structure in the 3DS were both known to perform the recited function of horizontally offsetting. The Court made that finding and found that they were substitutable. That's appendix pages 7 and 17. But then it went on to disregard its own factual findings. How? Because it adopted Nintendo's view of the law. The Court applied the following standard, and that is... Excuse me, because I want to get this right. It's important. The Court applied the standard that if two structures known to perform the same function... Do you want to give us a page number? I'm sorry, could you give us a page number? Page 17. The standard applied by the District Court, quote, if two structures known to perform the same function accomplish it significantly differently, i.e., in a different way, they are not interchangeable. And that would preclude, for example, this Court's finding in the all-site case where glue and a rivet were found to be equivalents. They certainly operate in substantially different ways. And that standard would preclude hardware and software from being found to be equivalent. They operate in different ways. Interchangeability strikes me as one of the less useful terms that we use, of the various terms we use to try to explain what the essence of equivalence is. I mean, if you talk about the function of getting from A to B, a bicycle is interchangeable with a motorcycle. You could use a bicycle, you can get from A to B, you can use a motorcycle and get to A to B, but they're surely not equivalent. You're absolutely correct, and the case law reflects it. The difference is between interchangeability and known interchangeability. No, but we know that bicycles and motorcycles are alternative ways of getting from A to B. Let me explain. The difference is known interchangeability, as applied by the courts, requires objective evidence at the time of the patent, as opposed to litigation-induced testimony regarding similarity. That's exactly the distinction in Trumanado. The difference is mere testimony of an expert saying, yes, one could be substituted for the other. That is not what Tamita presented here, and not what the district court relied on in making the factual findings. There is objective evidence at the time of the patent, prior patents, technical references, as well as testimony that the structure in the 3DS, the structure in the 3DS, the affine transformations in software, and the structure in the patent, readout time control and hardware, were each known to perform the recited function of horizontally offsetting stereoscopic images. This was just not a litigation-induced testimony. And that's the distinction in Trumanado. Why isn't that just reducing the equivalence test to a test of equivalent function? Because the knowledge- Assuming knowledge at the time of the patent, of the two, such as, assume in my hypothetical, people were aware of bicycles and motorcycles at the time of the patent. The Supreme Court has relied on known interchangeability for over 100 years and equated it to- Among various other terms. I don't think there's been any place in which the court has said, this is the only way to look at equivalence. Not the only way, Your Honor. In fact, the language that Warner Jenkinson uses, it seems to me, points exactly the opposite direction. They say, in our view, the particular linguistic framework used is less important than whether the test is probative of the essential inquiry. Does the accused product or process contain elements identical or equivalent to each claimed element of the patent and invention? And that's by way of saying there are various ways to express this notion of equivalence. Interchangeability can be helpful in some situations, but it isn't the be-all and the end-all of equivalence, right? Well, I think it's more than just helpful. It's potent. And the reason is, when you have objective evidence, as we had here, of known interchangeability, that reflects the view of a person of ordinary skill in the art at the time of a patent that they would know one structure, considering all the differences in way, could be used for the same function and interchangeable with the other structure. The knowledge of someone of skill in the art, as reflected in the prior documents we cited and the court relied upon, subsumes any difference in way. To someone of ordinary skill in the art, that objective evidence shows that they considered the software-based affine transformations and the hardware-based readout time and control to be equivalent, despite one being in hardware and one being in software. That's why the Supreme Court has equated equivalence with objective known interchangeability. And that, again, was the distinction in Schumanatta, mere testimony. There was no evidence in Schumanatta of known interchangeability. And that was obscured below and lost on the district court. And that's how they got to this erroneous standard of elevating the way prong to completely vitiate this potent evidence of known interchangeability. Did you argue to the district court that it had to assess equivalency based on the SD card mode of operation? We absolutely did, Your Honor. Where's that in the record? Sorry. Oh, in the record, sorry. I know where it is in the brief. So, for example, Your Honor, so in the record, for example, and this is telling, I'll give you this slide first and then explain it. Please. It's 5302-03, for example. So the SD card mode is relevant for two bases. First, it's- What line are you on? 5302, correct? Yes. 5302. 5302? 5302. Okay. And it extends to the next page. And the point being discussed here is that- What line are you on? Sorry. Starting line 17, 5302. Okay. Go ahead. And so the point being discussed here is that in the SD card mode, the 3DS takes two images, stores them to the SD card mode, and at that point, camera calibration has already been taken care of. The transformations like rotation and scaling that relate to camera calibration have already been effectuated and the images are saved. Where does it say SD card mode? I'm sorry. So on page 5303, line 7. So again- Okay. So to put this discussion in context, it's confirming, it's Nintendo's witness, expert witness confirming, that in SD card mode, the camera calibration and the various multiple transformations that Nintendo relies upon have already been taken care of and that when the image- And that's where you argued it. My question was, did you argue to the district court that it must assess equivalency based on the SD card mode of operation? You say that at page 51 of your blueprint, but there's nothing there. That's why I'm asking you for something in the record. Where did you argue it? We argued it in the post-trial papers, Your Honor. In the record that is where? Appendix. Okay. We're looking for that site, but the bottom line, Your Honor, is it's in the record clearly reflected here. Certainly Nintendo has not objected to that having been put before the court. And it most certainly was before the court in the post-trial papers. And you'll cite me to that in your response? We will look for that in your reply, Your Honor. I misunderstood. I thought you were looking for the evidence in the record. Okay. We're into our rebuttals. I'll reserve time. Thank you. Good morning. May it please the court. I'm James Blank for Nintendo Company Limited and Nintendo of America, Inc. Did Tamita make that argument on equivalency SD card to the district court? I don't have a recollection of that. I just don't know as I stand here right now. I can't honestly answer that as I sit here right now. Well, it's their question, so I know. Go ahead. There are two independent reasons why the judgment of non-infringement should be affirmed. One, to prove equivalence of the offsetting structures, by its own admission, Tamita chose to rely exclusively on evidence, alleged evidence, of known interchangeability. And that's reflected on page 20 of their opening brief and page 26 of their reply brief. With respect to the function way result test, they took the position in this case that it has no application and the district court was incorrect to have applied it, and therefore they put in no evidence at trial on the function way result test. With respect to the insubstantial differences test, they also put in no evidence. They relied exclusively on known interchangeability. At APPX0017, the district court found that Tamita's evidence of known interchangeability, alleged known interchangeability, was insufficient. Specifically, the district court found that Tamita's evidence amounted to nothing more than a showing that a timing-based technique, as in the patent, existed, and matrix operations for performing generic offsetting existed at a particular point in time. The district court found that that evidence failed to show that those two techniques were known to be interchangeable, and it also found that they were not known to be interchangeable for performing the recited function of the offset pre-setting means. Go ahead. You can finish your point, but I do have a question for you. The recited function of the offset pre-setting means is offsetting and displaying based on cross-point information, screen size information, and video image information. All their evidence showed at best was that there were two techniques for doing generic offsetting. That's not what the law requires. The law requires that they show that there were two known structures known to be interchangeable for performing the recited function. What do you understand by the term interchangeable or known interchangeability in this context? Again, to go back to my rather silly hypothetical, you say that a bicycle and a motorcycle are interchangeable with respect to the function of travel from A to B, but that does not strike me as what any court has meant by using the term interchangeable. It obviously seems to require somewhat more. What more do you think is required for the notion of interchangeability to be satisfied? I think the cases of this court and the Supreme Court are pretty clear on that. Well, why don't you tell me what they say. Sure. That the two structures have to be known to be interchangeable for performing the recited function, and they have to be known to be structurally interchangeable. Well, you've defined interchangeable by using the term interchangeable twice. Can you do better than that? Because I find the term to be amorphous, and I would like to have some guidance more than simply interchangeable means they can be interchangeable. Structurally or functionally. In Chua Minada, the court said that that means that the structures have to be known by persons of ordinary skill in the art or in the objective evidence to be equivalent, structurally equivalent. It is a bit of an amorphous concept. It certainly means a lot more than having two structures known to exist at a particular point in time that perform the same function. It's certainly looking at two structures from the perspective of one of ordinary skill in the art, and as the court in Warner-Jenkinson and Hilton Davis has said, it is objective evidence that informs the equivalence or either the functional way result or the insubstantial differences inquiry. Here, their evidence only got to the issue of whether they perform a generic function of offsetting, which in and of itself is not good enough. Even if their evidence were good enough on known interchangeability, it's not enough. It's not dispositive. And they failed to put in any evidence with respect to equivalence under the function way result test or the insubstantial differences test. Now, to go back to your statement that their evidence fell short on interchange, even under interchangeability as the standard, exactly how did it fall short in your view? That's the best way for me to understand what you mean when you say interchangeable as opposed to what they mean when they say interchangeable. Okay. So, first of all, it's not whether they're interchangeable. It's whether there was evidence showing that they were known to be interchangeable. Okay. I'm going to take the known to be a given. Okay. So, when I use interchangeable, read known interchangeable. Okay. So, the district court made many findings on this. At APPX0017, the district court found that, quote, using relative timing and using matrix operations to accomplish image offsets, again, just a generic offsetting function, were both known to the art prior to the issuance of the 664 patent. It's like your... So, that's the known part. Now, let's go to interchangeability. Right. And so then the district court did not find that relative timing and matrix operations were known to be interchangeable for performing offsetting. To the contrary, the district court found that the two techniques are not interchangeable for purposes of the insubstantial differences analysis, simply because they were both known to accomplish horizontal translations to create stereoscopic images. You might want to go do some research eventually about Samuel B. Colt and the invention of interchangeable parts. Before he started doing it, the concept didn't exist. I will. I will do that. So, then the district court, if you look at the opinion, the district court made those findings, and then the district court cited Chiuminatta, and correctly so, and said, you know, the evidence, Tamita, that you've presented is not enough. I need to look at... I have to look at the structures, and I'm going to go and do that. And then the district court, excuse me, went ahead and looked at the evidence on both sides, there was competing expert testimony and other types of evidence, and looked at the differences, because this is an equivalence case, looked at the differences and reached the conclusion that there were substantial differences under the insubstantial differences test. Well, that's what the district court did, and we all agree with that, even your opposing counsel would agree that's what the district court did, or at least I think so. But where in the evidence, could you point me to perhaps the most important aspect of the difference between the two, that in your view justifies a conclusion that these two techniques are not equivalent? What's the bell ringer here, in terms of the structure and to the extent that it applies function? On why they're not equivalent? Sure, I think the best evidence, for offsetting or for displaying? Let's talk about offsetting before we get to display. I think the best evidence on that was the district court's finding on APPX 0013, citing APPX 5221 lines 8 through 22 and many other, that's specifically what the district court cited. But the specific finding is that the district court made is the effect on the horizontal coordinate of a given pixel transformed by a matrix in the 3DS cannot be reduced to the addition of a single value. Instead, 3DS's transformation matrices, which is the structure accused of infringement here, also accomplish rotations and scalings, which will affect the horizontal coordinates of the pixels. And the district court found, based on that factual finding, which is not challenged by Tamita, that factual finding is not challenged by Tamita. In fact, virtually all of the factual findings that the district court made is not challenged by Tamita. As a matter of technology here, how does the effect on rotations and scalings affect the horizontal coordinates of the pixels in the accused device? So, Dr. Fromm, the testimony that I cited, APPX 5221, 8 through 22, is Dr. Fromm testifying on that point, and there are numerous other sites for that. Well, you can just tell me, summarize what he said. Okay, so, what he said was that when you do through matrix operations, when you use values, specifically in this case the values that are input into the matrices that the 3DS builds, into the A matrix and the B matrix, so you have the T value and then you have a value for scaling and you have a value for rotation, as a technical matter, all of those values affect the horizontal shift of the pixels. How does rotation, for example, affect the horizontal shift? Well, in the Nintendo 3DS, you are rendering, you are taking the original camera images and you are creating new images through rendering. So, you're modifying every single pixel in the XY coordinate. And the modifications include rotation, translation, and scaling. And, as a technical matter, there's extensive testimony from Dr. Fromm that the rotation, that all three of those things affect the horizontal coordinates of the pixels. Even though the ultimate outcome is just a set of horizontal coordinate changes? Correct. All right. Correct. In my limited time, I wanted to... So, the interchangeability evidence we submit, in and of itself, is a total failure. The way they tried this case was a total failure of proof and as an independent basis to affirm the judgment. On displaying, to me, the primary argument is that the district court conducted an improper component-by-component analysis. And, of course, this court can affirm the judgment of non-infringement on the basis of offsetting or displaying. Either one of those grounds is sufficient. So, on displaying component-by-component, this court, in Tamita 1, construed the displaying structure, the corresponding structure, to require synthesis frame memory 50, along with signal switch 40, and switch control unit 41 in their inputs and outputs. That was the corresponding structure when this case was before this court. In so doing, this court determined that all three of those components are necessary to perform the displaying function and linked in the specification to the displaying function. Tamita now is arguing that the synthesis frame memory 50 is optional. I would submit that this court's claim construction rejected that argument and the district court's findings of fact also rejected that. The district court made extensive findings of fact looking at all of the corresponding structure as construed by this court and comparing all of that structure to the substitute structure in the 3DS that Tamita accused of infringement. The district court acknowledged the component-by-component law of this court and said it was mindful not to engage in such an analysis, and it absolutely did not do so. I only have five seconds left. Use it well. Thank you. Thank you. Thank you. I don't want to take much time. Just one quick point. I assume you do not disagree with your friend that we can affirm the district court's judgment either on offsetting or displaying. That is correct, though. There are legal errors on each side. To your Honor's point, Nintendo did not challenge whether or not the SD card was put before the court. Had they, we would have cited to the post-trial proposed findings of fact and conclusions of law. So it is not in the record, but we would certainly request to submit that cite if deemed necessary. You mean it's not in the appendix, but it's in the record? It's not in the appendix. Correct. It's in the record. It is in the post-trial proposed findings of fact and conclusions of law. That's right. So let me address this notion of interchangeability and the question of what more is required. Nintendo tries to say that the evidence was simply generic offsetting. That is not the case. It is specifically evidence, and it's in the record, of using each of the structures for horizontal translations to create stereoscopic images. That's what the court explicitly found at page 17. Quote, to accomplish horizontal translations used to create stereoscopic images. And if you review the evidence in Tomita's reply at page 26, it's very specific. To require anything more would be to require 102 prior art. The specific recited function of horizontally offsetting for stereoscopic images, that's what these two structures were known to be interchangeable for. Let me address what Nintendo referred to as the most important difference regarding offsetting. And the court refers to this, notably in the functional way result analysis at appendix 13 to 14 of the decision, as the one individual difference significant on its own. And this is the single value issue. But the court itself goes on to explain that the single value issue is a result of rotations and scaling. And those rotations and scalings are a result of camera calibration. For example, appendix 52.22 lines 20 to 24, Nintendo's own witness explains that it's camera calibration that requires rotation of images and scaling of images. We also dispute that factually. And we address that in our reply brief. There is a single value in the matrix employed by the 3DS that goes to horizontal offsetting. There are other values that are separate that go to rotation and scaling. But the horizontal offset value is completely separable. And it makes sense. Tomita proved infringement, proved that the 3DS performed the recited function of offsetting based on cross point. And this court in the first appeal did not disturb that finding. The district court agrees. It is a completely separate value that Tomita has pointed to for the horizontal offsetting at issue here. It is, again, the SD card mode. Camera calibration has already been taken care of. Why is it relevant? One, because SD card mode is an infringement in and of itself because there are no additional transformations for rotation and scaling. It's completely separate. But it also is important in its own right as objective evidence that the horizontal offsetting referred to in the claim is completely separate from camera calibration. Your time has expired. So if you have one final sentence, we'll take it. Well, I want to say one final sentence. And that is, I asked you that question based on page 51 of your brief. The heading of which reads, the district court erred as a matter of law in failing to evaluate equivalence for the 3DS' mode of operation in which images are displayed from an SD card. I expect to be able to look in the record and see where that is. Not to be told, well, it's not in the record. But we'll find it for you. Understood, Your Honor. Had it been challenged. And one final point on that. The record is, in a sense, in the judgment itself. Despite the evidence of the SD card in the appendix, which I cited too, there is absolutely no mention whatsoever of that operation in the district court's decision. None whatsoever. Clearly, it was argued. Both experts talked about it. And we cite to that. And it's not even a single acknowledgment of that mode in the decision. Thank you. We thank both parties and the case is submitted.